## NEGLIGENCE IN NOT GIVING EMPLOYE A SAFE PLACE TO WORK.

[Circuit Court of Huron County.]

NEW YORK, CHICAGO & ST. LOUIS RY. CO. v. ROBERT ROE, AD-MINISTRATOR.

Decided, November 13, 1903.

*Master and Servant—Place in Which Employe is at Work Rendered Unsafe Without Notice—Engineer and Yard Helper not Fellow Servants—Damages for Wrongful Death Should Be Based on Reasonable Expectancy—Charge of the Court—Jury May Consider Loss of Opportunity to Inherit Property.*

1. Under the rule that an employer is bound to use ordinary care to give his employes a reasonably safe place to work and see that no injury is done them while working in a situation where they are unable to protect themselves, a railroad company is bound to use ordinary care to see that no cars are moved down upon a helper without notice, who, while cleaning up the yard, is working in an ash pit where he is so surrounded by cars and other obstructions that he is unable to see the track ahead.

2. A helper in a railroad yard while cleaning an ash pit is not a fellow servant of an engineer having charge of a locomotive with a fireman under him within the meaning of Section 3365-22, Revised Statutes, and where an engineer drew his engine out upon the same track where the helper was working at the head of a sharp incline for the purpose of oiling it and allowed it to stand with brakes unset, and because of the brakes being unset, the engine moved down the track and pushed some cars against the helper, who is killed, the railroad company is responsible for the negligence of the engineer.

3. In an action under Section 6135, Revised Statutes, for the recovery of damages for wrongfully causing the death of another, the measure of damages is the reasonable expectancy of what the family or next of kin might have received from the decedent and not the amount it is reasonably certain they would have received.

4. Where a charge as a whole is full and fair a reviewing court will not reverse the case because of unnecessary statements of the court which do not prejudice the plaintiff in error. Thus, where, in an action for wrongfully causing the death of a helper in a yard, the court charges the jury regarding the skill, knowledge and qualifications of the men, which charge was uncalled for either by the evidence or pleadings, the reviewing court will not reverse if it does not prejudice the party seeking to take advantage of it.

5. The loss to the children and the widow on account of being deprived of the possibility of inheriting property from the deceased which he might have accumulated during his life is one of the items that may be considered by the jury in arriving at the amount of a verdict in an action for death by wrongful act under Section 6135, Revised Statutes.

HULL, J.; PARKER, J., and HAYNES, J., concur.

Error to the Common Pleas Court of Huron County.

This action was brought by Robert Roe, administrator of John Roe, deceased, against The New York, Chicago & St. Louis Railroad Company, plaintiff in error, to recover damages for the death of John Roe, which, it is claimed, was caused by the negligence of the railroad company, the defendant below. The trial resulted in a verdict of $2,200 in favor of the plaintiff, and judgment was entered upon this verdict, and proceedings in error are prosecuted in this court by the railroad company to reverse that judgment.

It is claimed by the plaintiff in error that the verdict is against the weight of evidence, and that there is not sufficient evidence to show any negligence on the part of the railroad company; and further, it is claimed that the evidence as disclosed by the record shows the deceased to have been guilty of contributory negligence, and various rulings of the court during the trial of the case are complained of by plaintiff in error as erroneous.

The facts upon which the case was finally submitted to the jury are, in substance, as follows:

The deceased, at the time of the accident, in October, 1900, was employed by the railroad company at Bellevue, Ohio, engaged in work by which he was known as a "helper" in and about the yards at Bellevue, among other things aiding in keeping them in order and in keeping them clean. In the yards there was what was known as a cinder pit track, which was perhaps altogether 280 feet long, running from the main or "going-out-track," as it was called, off diagonally on a down grade until it finally ran into what is known as the pit, the bottom of which was practically level for a distance long enough to accommodate two cars. At the end of this track the pit was

about three feet and a half deep and at the side of this pit was what was known as the ash pit. Locomotives were run over the ash pit and above it on tracks, and while coal was being put in from the coal house the cinders and ashes were raked out into the ash pit, and from time to time, as needed, open or gondola cars were run into the cinder pit, upon the track, and the ashes from the ash pit, immediately on the other side of the wall, were shoveled into those cars, which were pulled out and the ashes carried away.

On the day that the decedent was killed he got into the cinder pit, where the cinder pit track was between the end of a car and a stone wall, or what was equivalent to a stone wall at the end of this pit where the cars stood. There were two cars in the pit at the time, for the purpose of being loaded with ashes and cinders. One car stood a few feet from the stone wall, the pit, as stated, being about three feet and a half deep. Roe got into this place apparently for the purpose of shoveling some coal or cinders and ashes that had fallen into the cinder pit into the car that stood there. Another man on the other side of the wall was at the same time shoveling ashes and cinders into the car.

Roe, and perhaps others, on this morning were engaged in cleaning up the yards generally, and, in doing that, and as a part of that work, Roe had gotten down into this pit to clean it up, and was doing this with a long handled shovel which he had at the time. While Roe was in this pit, about fifteen minutes after seven that morning (the accident occurring about ten o'clock), a locomotive was run out of the roundhouse for the purpose of attaching it to a passenger train which would be due a short time thereafter. Thomas Peters got upon the locomotive as its engineer, having under him a fireman. Peters took charge of the locomotive, intending to go out on the train as soon as it came in. The train, however, was late, and did not arrive for about two hours and a half.

After Peters took charge of the locomotive, he remained on it with his fireman in the yards on this cinder pit track, the tender being about forty feet from the car in the pit nearest

to the locomotive, and after he had been there about two hours, or about ten o'clock, Peters, the engineer, concluded to oil the locomotive. He did so, and ran his locomotive back seven or eight feet toward the pit and there stopped without setting his brakes, letting the locomotive stand on this track without the brakes being set, and this was the negligence complained of by the plaintiff below; and if the engineer was negligent, it is claimed the railroad company is liable under the "fellow servant" act for permitting the locomotive to stand upon this track which was laid at a grade down into the pit without the brakes being set; that, it is claimed, caused the injury complained of.

It appears by the record that shortly after Peters had run the locomotive back a few feet toward the cars, the brakes not being set, the locomotive started down this track, which was at quite a steep grade at this point, toward these two cars in the cinder pit, Roe still being at work at the farthest end of the farthest car, between that car and the stone wall, as before stated. The locomotive struck the car nearest it and pushed that back against the other, so that Roe was caught beneath the rear end of the furthermost car and the timber that lay there. His legs were first caught and he cried for help, crying out "Go ahead." The cry was heard by various men in the vicinity, and the engineer got off his locomotive and went back to see what had happened, and undertook to pull the cars out of the pit up this grade, but was unable to start the two cars, or rather the record shows that he did not go back until he had made this attempt, and being unable to pull the cars out on a "straight pull," he went back, and, seeing Roe's situation, evidently thought it would be safe to back the locomotive slightly, so as to "take up the slack," as it is called, between the locomotive and the car and between the two cars. He thereupon went back to his locomotive, backed it up perhaps not more than six inches, but it was backed so much that it did in fact push the cars further back, and Roe was crushed between the end of the car and the wall and was killed instantly, or practically so. After backing up this short distance, the engineer started the locomotive ahead, and was then able to pull the cars out, and did so.

It does not appear that Peters, the engineer, knew that Roe was in the pit. Roe had taken no precaution himself to give any warning that he was there, or to have any notice given to the engineer. There is no positive evidence that Roe was ever in this pit before or that anybody else was ever in it, for the purpose of cleaning it out, as he was doing on this occasion. The evidence tends to show that after Peters discovered that the locomotive was moving down the grade, he apparently did all he could to stop the locomotive, but was unable to do so. His attention was first called to the fact that it was running down grade by his fireman, who shouted to him as a train was passing by that his locomotive was moving. Until then the engineer did not realize that it was moving.

It was claimed by the plaintiff below, the defendant in error, that it was negligence on the part of the railroad company, through its engineer, to permit this locomotive, without the brakes being set, to stand upon the track, which was laid at a steep grade at this point, with these two cars upon the track in the pit, and it appearing that Roe's injuries were due to the moving of the locomotive, that the railroad company was liable.

It is claimed on the part of the railroad company that, under this state of facts, no negligence is shown against the railroad company—no want of ordinary care, but that the death of Roe was an accident for which the company is not liable; that all ordinary care was exercised by the railroad company.

It is urged that the company was under no duty at the time to protect Roe against such an accident as this. It is said that there is no evidence in the record that at any time prior to this Roe, or any one else, had got into this pit under these circumstances, with cars standing there, and that the railroad company had no reason to suppose or to anticipate, as an ordinary, prudent person, that any man would be in this pit subject to such a danger as this; and further, that it was negligence on the part of Roe, contributing directly to his injury, to be in the pit under these circumstances; that if he went in there, he took his own chances and assumed the risk.

It is well established by the authorities that no one is liable for a failure to protect a person to whom he does not owe a

performance of any duty. It is also well established that an employer is bound to exercise ordinary care to give his employe a reasonably safe place to work and to furnish him reasonably safe appliances with which to do his work, and when such employe is engaged in the performance of his duties, is so situated that he can not protect himself, it is the duty of the employer to exercise ordinary care to see that no injury is done to him.

In the leading case of *Lake Shore & M. S. Ry. Co.* v. *Lavalley,* 36 Ohio St., 221, where a man was engaged at work under a car, and while so engaged another car and locomotive ran against the car and the man was injured, it was held by the Supreme Court that the man so engaged was entitled to protection.

It is said that the railroad company had no knowledge, and that the enginer had no knowledge at the time that Roe was in this pit—no actual knowledge, and that is undoubtedly true.

There is no claim made, however, that Roe was not properly engaged in the performance of his duties upon the day he was killed. It was part of his work to clean or to help in the work of cleaning up this yard. In the yard, or a part of it, was this cinder pit which was used for the purposes stated, and being used in that way, ashes and cinders would naturally accumulate there, falling off the cars and between the cars and the ash pit. On the other side of the wall were the coal docks, where the locomotives were coaled, and in doing that work, coal would naturally and unavoidably fall into this pit in some amount, and to clean the yards, to put them in good condition and in good order, it was as necessary to clean out this cinder pit where the track was as any other part of the yard; and under general instructions and orders (there is no evidence that Roe had any special orders on that day), he had gotten down into this pit with a shovel to do this work. It seems to us that it can not be said that Roe was guilty of any contributory negligence in doing this, or that he was doing anything at this time that was out of the line of his duty, or anything improper. We are of the opinion that he had the right to presume that while he was engaged in the performance of this work, which it was neces-

sary and proper for him to do, that he would be protected against such an injury as this. In a yard of this kind, with men working about it everywhere, here and there, at the ends of cars and on the tops of cars and under cars, on tracks level with the surface and on tracks in pits and in various ways, it was the duty of the railroad company, through its officers and employes, not to move cars as these cars were moved, without giving some warning or notice of the fact that cars were to be so moved.

After it was discovered that this locomotive was moving, no effort was made to give any notice or warning to any man or men who might be in the pit; no bell was sounded and no whistle was blown, no shouting or calling out, and it seems to us that it might have been presumed or supposed, at least, by the engineer that men might be in this pit at work at that time. There was a man working in the ash pit opposite this pit, in plain sight of the engineer, who had been on his engine for two hours and a half, and he knew these cars were run into the pit for the purpose of being loaded with ashes, and we can not say, as a matter of law, that he would be warranted in presuming that there was no one in this pit that could be injured by cars being run down into it.

Whether the engineer himself was guilty of negligence at this time in letting the engine stand without the brakes being set was a question that was submitted to the jury, and we think was a proper question for the jury to pass upon, and that the jury were warranted in finding that the engineer was guilty of negligence in so doing. The locomotive was standing only about forty feet from those cars—a heavy passenger locomotive standing upon the track laid at quite a steep grade at this point, and to oil the locomotive and run it back six or seven feet in the direction of these cars, and then let it stand without setting the brakes, in view of all the circumstances here, it seems to us the jury were warranted in finding to be negligence. We think that it should have occurred to the engineer that a locomotive left in that way was liable to start any moment down this track, as it did so, and do the damage it did on this occasion, or similar

damage to property or to life. Under the rules of negligence, it seems to us that the conduct of the engineer was not ordinary care. These cars were in plain sight and very near; men were working all about the yards, and a man was liable to be in this pit beyond these cars as well as at any other place in the yards, and to let this locomotive stand without the brakes being set so that at any instant it might start, was not the exercise of ordinary care.

A recent decision of the Supreme Court is cited by counsel for plaintiff in error as in point in this case—the case of *Erie Ry. Co. v. McCormick,* 69 Ohio St., 45. The first paragraph of the syllabus reads:

"Omission of duty is not the foundation of an action unless it results in injury to one for whose protection the duty is imposed."

We think in this case there was a duty imposed upon the company to protect Roe while he was in the performance of his work.

In this case decided by the Supreme Court, a trackman who had been in the employ of the company for many years was walking across a bridge where there was no place to walk except on the track, and a train approached him from behind. The engineer did not see him on account of a storm. The track being slippery, he was unable to get to the end of the bridge before the train overtook him, and he was killed. It was claimed that the railroad company should have made some provision for a man to walk across the bridge, or should have furnished some place for him to have stepped aside; but the Supreme Court held the company owed no such duty to him, and further found that he had been in its employ for many years as trackman and had full knowledge of the condition of the bridge, and that there could be no recovery for his death.

It does not seem to us that this case is applicable to the facts of the case at bar. Roe was engaged at the time in the performance of his duty, and to perform his duty he was required to go to a place where he could not see the engine, and while in the performance of his duty in such a place as that, doing his work there, the company owed to him a duty not to run

cars or a locomotive down into the pit and crush him.  We hold
that the verdict was sustained by the evidence.  If the negli-
gence of the company were a doubtful question, still it would
be a proper question to submit to the jury.  If it were a question
upon which the minds of reasonable men might differ, it would
be a question that a jury should properly pass upon, and under
the evidence in this case, their finding will not be disturbed by
the court.  In *Lake Shore & M. S. Ry. Co.* v. *Murphy,* 50
Ohio St., 135, the Supreme Court say in the last paragraph
of the syllabus:

"It is the duty of a railway company to afford reasonable
protection to its employes against dangers incident to their
work (*Railway Co.* v. *Lavalley,* 36 Ohio St., 221, approved and
followed).  And if, under the circumstances of this case, a rule
providing for warning was necessary, and by the exercise of
reasonable care on the part of the company, that necessity could
have been foreseen, it was the duty of the company to prescribe
such rule.  Whether it ought to have so provided or not, was a
question for the jury."

The court say further:

"The evidence as to contributory negligence on the part of
deceased made a case which, at least, was doubtful, and about
which different minds might differ as to the proper inference
to be drawn. Such a question can not properly be determined
by the court as matter of law, and should be submitted to the
jury."

On page 143 of the opinion, delivered by Judge Spear, the
court say:

"Negligence is always an inference from facts put in evidence,
as contrasted with a fact which is the subject of direct proof.
The proof disclosed facts calling for logical, as distinct from
legal, deduction.  Where that is the case, the question is for the
jury, and not for the court."

It is claimed, however, that the engineer and Roe did not sus-
tain such relations toward each other as to entitle Roe to bring
an action aaginst the railroad company for the negligence of the
engineer; in other words, that Roe was not within Section 3365-
22, Revised Statutes, or the "fellow servant" act, as it is called,

for the reason that Roe and the engineer were fellow servants,
—that they were in the same branch of the service. We are
of the opinion, however, and hold that they were not fellow serv-
ants, and that Roe came within the provisions of this section.
The engineer had under him another employe (the fireman) sub-
ject to his control. Roe had no one under him or under his con-
trol. The engineers' duties were entirely different from those of
Roe; he was in the motor department of the company, engaged
as engineer on the locomotive, entirely separate and distinct
from Roe's work. Roe was engaged as one of a gang of men in
cleaning the yards. We think they were engaged in different
branches of the service, and that therefore the negligence of the
engineer, under this statute, was the negligence of the company,
and the company is liable therefor.                    ,

We have discussed this general question in a case in this county
—the case of *Hill* v. *Railway Co.*, 22 C. C., 291. The opinion
was delivered by Judge Parker.

It is claimed that the court erred in its charge to the jury
on the question of damages and in refusing to charge as re-
quested by counsel for the railroad company. The court was
asked in request number five to give an instruction to the jury
upon the degree of proof with which the damages to the next
of kin of the deceased must be sustained or must be established
to warrant the jury in returning a verdict for the different
elements that enter into damages of this kind. The court was
asked to charge as follows:

"If, under the instructions now and which shall hereafter be
given you by the court, you find for the plaintiff, and so come
to determining the amount of the damages which should be
awarded him, the court says to you that amount must be strictly
limited to the amount of pecuniary damage, that is, to the
amount of money which it is reasonably certain from the tes-
timony in this case that the widow of John Roe, deceased, and his
children would have received from him had he not been killed.
In arriving at this amount, you should consider his age at the
time he died; how long he would have been reasonably certain
to have been able to have continued to earn money as a laborer,
and from this time should be subtracted the time, if any, which
he was reasonably certain to have lost from sickness or increas-
ing age. From the amount of money which you find he would
have thus been reasonably certain to have earned had he not

been killed, must be subtracted the amount of money which he would have required for his own clothing, board and other personal expenses, in sickness and in health had he lived, and you should consider such other facts as appear in the evidence bearing upon the amount of money which the widow and children were reasonably certain to have received from John Roe had he not been killed. When you have thus arrived at the amount of money which the widow and children of John Roe would have been reasonably certain to have received from him had he lived, in the form which the court shall direct, you should determine what the present worth of that amount is, for the reason that if anything is paid as the result of this trial, it will be paid in a single lump sum, and as of the first day of the present term of court, whereas, if John Roe had lived, the money which the widow and children would have received from him, would have been earned and have come to them as time passed, through such a number of years as you shall find under the instructions given you, he would have been able to have worked and earned money at his occupation, which appears from the evidence in this case to have been that of a common laborer.''

This was asked to be given before argument, and was refused. The court, in its general charge to the jury after argument gave an instruction which was similar to this in many respects, but differed in one particular, and if the defendant below was entitled to this instruction, it was entitled to have it given before argument, as requested.

The court, in its general charge to the jury, gave this instruction substantially as requested except that it changed the phrase ''reasonably certain'' to ''reasonable expectation,'' or ''might reasonably expect.'' The substance of it was that instead of saying to the jury they could only allow the plaintiff the damages which were reasonably certain would ensue to the next of kin on account of the death of Roe, they might allow such damages as might be reasonably expected to follow from his death. It is urged that the instruction as requested was correct and that it was error to refuse it, and a decision of the Supreme Court is cited to sustain this contention—the case of *Pennsylvania Co.* v. *Files*, 65 Ohio St., 403, where the Supreme Court say in the second paragraph of the syllabus:

''Where prospective damages from an injury are claimed, they should be limited by the court in its charge to such as may be reasonably certain to result from the injury.''

This was an action for personal injuries where death did not ensue, and the court held that for the prospective damages to plaintiff in the way of pain, or otherwise, the trial court should have said to the jury that plaintiff could only recover for that which it might be reasonably certain would result from the injury.

In our judgment, this is not the rule when applied to a death case, under the statute. This action is brought under Section 6135, Revised Statutes, and were it not for this statute, no action could be maintained for the death of a person. The action is unknown at common law; it is purely a statutory action, and the personal representative of the deceased is entitled to recover for the benefit of the next of kin, just as the statute says he is entitled to recover, and in an amount which the statute warrants. Section 6135, Revised Statutes, provides:

"Every such action shall be for the exclusive benefit of the wife, or husband, and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the personal representative of the deceased person; and in every action the jury may give such damages, not exceeding in any case ten thousand dollars, as they may think proportioned to the pecuniary injury resulting from such death, to the persons respectively for whose benefit such action shall be brought."

The damages that are allowed to be recovered in a case of this kind are, to be sure, more or less speculative. They must be. How long Roe might have lived if he had not met with this accident, we can not tell, or how much he might have earned in the future can not be told with certainty; or how much he might have given to his wife or children, the jury could not tell absolutely, with certainty. They can only judge from what he has done in the past, from what he has earned in the past, from his health and his prospects of life, as shown by the evidence. But the statute provides that the jury (after taking all these things into consideration) shall allow such sum, not exceeding ten thousand dollars, as they may think proportioned to the pecuniary injury resulting from such death. The statute does not provide that they shall give such sum as they are reasonably certain will result, but such sum as they may think

under the evidence is proportionate to the pecuniary injury resulting from such death, and it seems to us that this is to be established by a preponderance of the evidence like any other question in the case; that it would be going beyond the statute to say that the jury could only return such damages as they were reasonably certain the next of kin or children, or parent, as the case might be, would sustain.

This question, we think, has been settled by the Supreme Court, in *Grotenkemper* v. *Harris*, 25 Ohio St., 510. The Supreme Court say:

"Under the act requiring 'compensation for causing death by wrongful act, neglect, or default,' etc., persons who had no legal claim for support upon the deceased may, as next of kin, have an action maintained for their benefit, to recover the compensation allowed by the statute.

"In such cases, in determining the pecuniary injury resulting from the death, the reasonable expectation of what the next of kin might have received from the deceased had he lived, is a proper subject for the consideration of the jury."

On page 512 of the opinion the court say:

"The reasonable expectation of such pecuniary benefit to the next of kin is what the jury are to ascertain and allow; and that expectation may consist of what a person may give his next of kin while living as well as what they may inherit from him at his death."

The court of common pleas, it seems to us, was clearly within the law as laid down by the Supreme Court, in refusing to give this request and in giving the instruction that was given to the jury in the general charge. The request, however, is faulty on another ground, in that it does not include any element of loss which may have resulted to the children and wife of the deceased on account of their being deprived of inheriting after acquired property from the deceased, at his death. That is an element of damage that may be considered by the jury, as well as the loss of benefit from the deceased during his lifetime. A case can readily be conceived of, if a man was engaged in large business enterprises and amassing large profits from year to year, where this expectation of inheritance would be a large element of probable damage to his wife and children.

We hold, therefore, that there was no error in the court refusing this instruction.

Another portion of the charge is criticised and objected to as erroneous. The court said to the jury:

"In determining whether such ordinary care was exercised by the defendant company, you should consider the nature of the work and the appliances therefor and what, if any, apprehension of danger the defendant had, or, in the exercise of ordinary care, should have had."

Then follows this, which was objected to and claimed to be erroneous:

"You may consider also what knowledge, if any, the company possessed as to the experience, qualifications and fitness of the men whom it employed to do the work, including John Roe."

It is probably true that the issues in this case did not call for any instruction to the jury upon this question of experience or of fitness of the men engaged in this work, including John Roe. But it is very common practice where a question of contributory negligence is involved to instruct the jury that they may consider all the facts and circumstances, including the man's experience in the work, etc.; but there was, in fact, no claim made here that John Roe was inexperienced, or that the engineer was inexperienced. It was perhaps an inadvertence on the part of the court, in giving an instruction often given. But we are of the opinion, taking the whole charge together, that there was nothing in this to the prejudice of the plaintiff in error. It is not of sufficient consequence to warrant a reversal of the case. In our judgment the jury were not misled by this remark of the court, reading it in the light of the whole charge which, as a whole, was full and very fair. After a careful review of the record, we find no error to the prejudice of the plaintiff in error, and the judgment of the court of common pleas will therefore be affirmed.

*C. P. & L. W. Wickham* and *John H. Clarke,* for plaintiff in error.

*Jesse Vickery,* for defendant in error.